# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 09-cv-01614-REB-MEH

SHANE BASS, individually and on behalf
of a class of other similarly situated persons,

Plaintiffs,

v.

PJCOMN ACQUISITION CORP., et al.,

Defendants.

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

---

Defendants' premature motion for summary judgment must be denied. Their motion is based on an erroneous application of the law and largely ignores Defendants' own unlawful policies. Moreover, Plaintiffs have presented more than enough evidence to show genuine issues of material fact regarding all of Defendants' wage and hour violations.[1]

Defendants ask this Court to simply assume that their per mile vehicle reimbursements were sufficient to reimburse Plaintiffs for their actual automobile costs incurred. The evidence presented here establishes otherwise. In fact, applying correct math to Defendants' own wage data clearly shows genuine issues of material fact regarding minimum wage violations.

The evidence also clearly demonstrates that Defendants violated Colorado law by failing to pay the cost of purchase, maintenance and cleaning of uniform items and special apparel they expressly require Plaintiffs to wear.

---

[1] Defendants' motion also exceeds the page limit by eight (8) pages, *see* REB Civ. Practice Standards, V.I.1(a), and should be stricken for this reason alone. *Id.*

For the reasons set forth herein, the Motion should be denied in full. However, at the very least, the Motion should be continued pending completion of discovery. Plaintiffs are entitled to full merits discovery and fair opportunity to obtain an expert report before summary judgment even becomes an issue in this case. Because this case is early, Plaintiffs have not had those opportunities. Plaintiffs' declaration pursuant to Rule 56(f) is attached as Exhibit 3.

## I.   <u>ARGUMENT</u>

### A.   Standard Governing Review on a Motion for Summary Judgment

Defendants are entitled to summary judgment only if they can show "that there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the Plaintiff. *Anderson vs. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.*

In deciding Defendants' motion, all facts presented by Plaintiffs are accepted as true and a court views the evidence and all inferences drawn from the record in the light most favorable to Plaintiff. *Simms vs. Okla. ex rel. Dep't. Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999); *Fisher vs. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009); *Calhoun vs. Gaines*, 982 F.2d 1470, 1472 (10th Cir. 1992); *Goodson vs. Nat. Assoc. of Letter Carriers, AFL-CIO*, 2007 U.S. Dist. Lexis 23090, *8-9 (D. Colo. Mar. 29, 2007) (Ex. 5). "It is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment." *Seamons vs. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000).

Plaintiffs need not prove their case on summary judgment here. Rather, "[t]o avoid summary judgment, [Plaintiff] must establish, at a minimum, an inference of the presence of

each element essential to the case." *Bausman vs. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (*citing Hulsey vs. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)).  "'[[Plaintiff] is given 'wide berth to prove a factual controversy exists.'"  *MacKenzie vs. Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (*quoting Jeffries vs. Kan. Dep't. of Soc. & Rehab. Servs.*, 147 F.3d 1220, 1228 (10th Cir. 1998).

**B.     Counts I & II:  Violation of Federal and Colorado Minimum Wage Law**

**1.     Burden of Proof**:

Plaintiffs have the burden of proof by a preponderance of the evidence.  However, to the extent that Defendants are attempting to rely on any tip credit to establish that they paid their delivery drivers minimum wage, Defendants have the burden of proving that they are actually entitled to take such credits.  *See, e.g., Bernal vs. Vankar Enterprises, Inc.*, 579 F.Supp.2d 804, 810 (W.D. Tex. 2008) (employer must prove entitlement to tip credit).

**2.     Elements Which Must Be Proven and Applicable Law**

Plaintiffs must prove that their net wages (wages paid less unreimbursed job expenses) fell below minimum wage in any workweek. 29 U.S.C. § 206; *Marshall v. Quik-Trip Corp.*, 672 F.2d 801, 807 (10th Cir. 1982); *Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1223, 1236-37 (11th Cir. 2002).

**3.     Response to Defendants' "Material Undisputed or Admitted Facts"**

Response to Defendants' ¶¶ 1 - 10.   For purpose of the Motion before the Court only, no dispute exists with regard to the facts set forth in ¶¶ 1 – 10 of Defendants' statement of facts. [We've run into issues with doing this].

Response to Defendants' ¶¶ 11-18.  Genuine issues of material fact exist with regard to the matters set forth in ¶¶ 11-18 of Defendants' statement of facts.  Defendants only partially

reimbursed Plaintiffs for the cost of operating their vehicles to deliver Defendants' pizzas and other food products. Ex. 1, ¶¶ 2, 5-6; Ex. 2, ¶¶ 2, 5-6. The automobile reimbursement Defendants provided Plaintiffs barely reimbursed them for the cost of gasoline purchased to perform their jobs. *Id.* Plaintiffs anticipate that their expert, Thomas Austin of Sierra Research, will testify that the actual cost of operating a vehicle for pizza delivery closely approximates the IRS rate and that the automobile reimbursement provided by Defendants only equated to approximately $0.25 to $0.30 per mile, or less. Ex. 3, ¶¶ 2-4. The applicable per mile IRS standard business reimbursement rates were:

| Time | IRS Standard Bus. Mileage Reimbursement |
|------|------------------------------------------|
| 2006 | $0.445 |
| 2007 | $0.485 |
| Jan-June 2008 | $0.505 |
| July-Dec 2008 | $0.585 |

Response to Defendants' ¶ 19: No dispute exists with regard to the matters set forth in ¶¶ 1 – 10 of Defendants' statement of facts.

Response to Defendants' ¶¶ 20-21: Genuine issues of material fact exist with regard to the matters set forth in ¶¶ 20-21 of Defendants' statement of facts. Defendants required Plaintiffs to use cellular telephones to perform their jobs by requiring them to call customers as they approach the delivery destination, requiring them to call their stores when they could not find a customers' address, requiring them to call their stores when problems arose with customers or orders, and by requiring them to call their store if an accident or robbery occurred. Ex. 1, ¶ 8; Ex. 2, ¶ 8. Defendants further required Plaintiffs to use cell phones to perform their jobs by calling Plaintiffs while in route to convey job instructions. *Id.* The policy identified by Defendants only prohibits use of cell phones "for work-related reasons while driving." Dfd.'s

Ex. A-7, p. 16.  It does not prohibit use of cell phones on the job or use of cell phones to perform the job tasks.  *Id.*

Response to Defendants' ¶¶ 22 & 23:   Genuine issues of material fact exist with regard to the matters set forth in ¶ 22 of Defendants' statement of facts.  First, Plaintiffs were required to wear uniform items and special apparel.  Ex. 1, ¶ 9; Ex. 2, ¶ 9.  These items all contained Papa John's logo and mostly contained Papa John's distinctive green and red color scheme.  *Id.* Defendants also required Plaintiffs to purchase original and replacement "tan or khaki" pants Defendants required as part of the delivery drivers' uniforms.  *Id.*  The policy identified by Defendants clearly begins, "Standard Uniform consists of any style neatly pressed khaki or tan pants, the company issued polo shirt or approved logo wear shift/vest and a nametag (if shift-vest is not embroidered)."   That policy also states that "[h]ats are required if working in the production area," which is where Plaintiffs worked much of the time," and allows only "[a]ny style Papa John's hat."  Dfd.'s Ex. A-7, p. 17.   Plaintiffs did not wear these uniform items off duty.  Ex. 1, ¶ 10; Ex. 2, ¶ 10. Defendants' uniform policy warns of "corrective action, up to and including separation from employment" for failure to comply.  *Id.*

Second, Plaintiffs were required to specially clean and maintain their uniform items. Plaintiffs' uniforms were regularly stained and soiled from working in a pizza shop around grease, pizza sauce, dirty dish water and dirty mop water.  Ex. 1, ¶¶ 11-12; Ex. 2, ¶¶ 11-12.  This required repeated pre-treating of stains and soiled areas with stain removers.  Ex. 1, ¶¶ 11-12; Ex. 2, ¶¶ 11-12.  The required "khaki or tan pants" must be "neatly pressed" Per Defendants' policy.  Dfd.'s Ex. A-7, p. 17.   Also, unlike regular clothes, the uniform items and special apparel had to be cleaned every shift to comply with Defendants' rules.  Ex. 1, ¶ 12; Ex. 2, ¶ 12.

Response to Defendants' ¶ 24:  Genuine issues of material fact exist with regard to the

matters set forth in ¶ 24 of Defendants' statement of facts.  Plaintiffs needed maps, flashlights and batteries to perform their jobs as delivery drivers in a timely and efficient manner.  Ex. 1, ¶ 13; Ex. 2, ¶ 13.

Response to Defendants' ¶ 25:  Genuine issues of material fact exist with regard to the matters set forth in ¶ 25 of Defendants statement of facts.  Plaintiffs were denied the applicable federal and Colorado minimum wages due to unreimbursed business expenses.  Ex. 1, ¶¶ 2-14; Ex. 2, ¶¶ 2-14; see also response to Defendants' ¶¶ 11-18 above and calculations below.  Also, Defendants improperly invoked the Colorado tip credit as they required Plaintiffs to share tips with food preparers, exercised control over Plaintiffs' tips, and denied Plaintiffs from receiving tips intended for them.  Ex. 1, ¶¶ 16-17; Ex. 2, ¶ 16-17.

Response to Defendants' ¶¶ 26-27:  Genuine issues of material fact exist with regard to the matters set forth in ¶¶ 26-27 of Defendants' statement of facts.  Tip income does not count toward payment of minimum wage when an employer improperly invokes a valid tip credit.  See explanation below.  For purpose of the Motion only, no dispute exists with regard to the dates of employment and pay rates identified by Defendants.

**4.    Additional Relevant Facts**

A.    Plaintiffs usually drove at least ten (10) miles each hour they worked as delivery drivers for Defendants.  Ex. 1, ¶ 4; Ex. 2, ¶ 4.

B.    Defendants have not reimbursed Plaintiffs for the cost of any job-related expenses beyond the partial reimbursement for personal vehicle use.  Ex. 1, ¶ 7; Ex. 2, ¶ 7.

C.    Defendants did not obtain, track or record Plaintiffs' job-related expenses.  Ex. 1, ¶ 15; Ex. 2, ¶ 15.

D.    Defendants' uniform policy also provides:

> Team members are expected to maintain a neat, crisp and clean appearance at all times. Whether on duty or off the clock, when team members are wearing the Papa John's uniform or logo, they are ambassadors of the brand and should always conduct themselves in an appropriate manner, as to positively reflect on Papa John's image. Wearing Papa John's uniforms or logo wear in nightclubs, gambling casinos, adult entertainment centers, or similar establishments is prohibited. While on duty, team members are required to adhere to the following standards (local and state codes and/or regulations may be strict – compliance is required):

Dfd.'s Ex. A-7, p. 17.

E.    Defendants' uniform policy further provides:

> Failure to comply with any of the above dress code, appearance or image standards will result in corrective action, up to and including separation from employment. *Id.*

F.    Defendants never notified Plaintiffs of any intent to utilize the federal tip credit, but Defendants have purported to use Colorado's tip credit since approximately January 1, 2008. Ex. 1, ¶ 18; Ex. 2, ¶ 18.

**5.    All Required Facts Can Be Established**

a.    **Basic Applicable Minimum Wage Law**

Plaintiffs can easily establish that their net wages fell below the applicable federal and Colorado minimum wages.

Under the Fair Labor Standards Act ("FLSA"), an employer is required to pay each employee wages at or above the minimum wage rate each workweek. 29 U.S.C. § 206; *see also Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 704-05 (E.D.N.C. 2009). Such wages must be paid "finally and unconditionally" and "free and clear." 29 C.F.R. § 531.35; *Marshall*, at 807. Defendants do not dispute that a deduction or unreimbursed job-expense that "cuts into" the minimum wage violates the FLSA. 29 C.F.R. § 531.36(b); *Marshall*, at 807. There is no legal difference between deducting a cost directly from the worker's wages and shifting a cost,

which an employer cannot deduct, for the employee to bear. *Arriaga*, at 1236-37 (shifting costs that primarily benefit the employer to the employee constitute "de facto deductions"); *Garcia*, at 704-05 (same).

Without citation of any legal authority, Defendants errantly presume that tips received by Plaintiffs nullify minimum wage violations. Such a presumption is contrary to every federal court case examining this issue. The courts have consistently held that tips cannot legally compensate for, or nullify, shortfalls in minimum wage, except to the extent an employer lawfully invokes a tip credit.[2] *See, e.g., Reich vs. Chez Robert, Inc.*, 28 F.3d 401, 403-04 (3rd Cir. 1994) (appeal from decision that minimum wage was violated by not reimbursing job expenses); *Bernal*, at 810; *Chan vs. Triple 8 Palace (hereinafter "Triple 8")*, 2006 U.S. Dist. Lexis 15780, *38-39 (S.D.N.Y. Mar. 31, 2006) (Ex. 6) (examining minimum wage violation resulting from unreimbursed job expenses); *Chan vs. Sung Yue Tung Corp. (hereinafter "Sung Yue Tung")*, 2007 U.S. Dist. Lexis 7770, at *60-61 (S.D.N.Y. Feb 1, 2007) (Ex. 7) (refusing to allow employer to count tips toward minimum wage when it did not validly invoke tip credit).[3] The federal courts (1) expressly refuse to allow employers, like Defendants here, to comply with minimum wage requirement by claiming that tips were earned beyond the amount of a valid tip credit taken, whether those employers violate the minimum wage by failure to pay sufficient wages or by unreimbursed expenses "cutting into" minimum wage, as here, and (2) expressly refuse to allow employers to offset minimum wages owed employees based on tips received,

---

[2] An employer may pay qualified tipped employees a wage below the federal minimum if (1) the employees receive a required notice of intent to use the tip credit and (2) all tips received by the tipped employees are retained by them except for "tip pooling" with "employees who do not customarily and regularly receive tips." 29 U.S.C. § 203(m). Colorado law permits a tip credit toward the state minimum wage, but nullifies use of any tip credit when an employer requires "sharing of tips with employees who do not customarily and regularly receive tips, such as management or food preparers" and Colorado law bars denial of tips intended for employees. C.R.S.A. § 8-4-103(6); CCR § 1103-1, § 2, subsection entitled "Tipped Employee;" CCR § 1103-1, § 10. Under either federal or Colorado law, the difference between the full minimum wage and the sub-minimum wage paid to a qualified tipped employee is called the "tip credit." 29 U.S.C. § 203(m); 7CCR § 1103-1.

[3] Tips are gifts from customers, not compensation paid by the employer. *Sung Yue Tung*, at *53.

other than the amount of a valid tip credit taken.  *Id.*

*Triple 8* recognizes the obvious point that an employer cannot rely on the federal tip credit when the non-tip compensation by itself nominally equals or exceeds minimum wage.  *Id.*, at *45.  Here, Defendants always nominally paid Plaintiffs an hourly wage at or slightly above the federal minimum wage, and tips therefore can have no bearing on Defendants' federal minimum wage compliance.

Defendants' purported use of the Colorado tip credit since January 1, 2008 would only allow them to utilize a tip credit between the wage paid and the Colorado minimum wage.  In the case of both Mr. and Mrs. Bass, that maximum tip credit was only $0.17 per hour.  For purposes of responding to Defendants' motion for summary judgment on Count II, Plaintiffs will assume that the $0.17 tip credit is valid.  However, Plaintiffs contend that Defendants' attempt to use the tip credit should be nullified per C.R.S.A. § 8-4-103(6) and CCR 1103-1, § 2.  See § I(C) below.

When employees, like Plaintiffs, are compensated at or near minimum wage, courts expressly recognize that all unreimbursed business expenses necessarily "cut into" minimum wage.  *See, e.g., Sung Yue Tung*, at *22 (unreimbursed job expenses "necessarily" decreased minimum wage employees' net pay below minimum wage).

### b. Defendants Must Reimburse at the IRS Standard Mileage Reimbursement Rate

The DOL publishes its Field Operations Handbook ("DOL Handbook") to provide "interpretations of statutory provisions" and "general administrative guidance."  (Exs. 4-A & 4-B).  It was "developed by the [DOL's Wage and Hour Division] under their general authority to administer laws that the agency is charged with enforcing."  *Id.*  The DOL Handbook "reflects policies established through changes in legislation, regulations, court decisions, and the decisions and opinions of the WHD Administrator."  *Id.*

Section 30c15 of the DOL Handbook, entitled "Car expenses – employee's use of personal car on employer's business," expressly addresses reimbursement of vehicle expenses incurred by pizza delivery drivers:

> In some cases it is necessary to determine the costs involved when employees use their cars on the employer's business in order to determine MW [minimum wage] compliance.  For example, **car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants**.
>
> (a) <u>As an enforcement policy</u>, the Internal Revenue Service (IRS) <u>standard business mileage rate</u> found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated  recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes.  The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rata basis."
>
> (b) The IRS standard business mileage rate may be used in lieu of actual costs for FLSA purposes <u>whether or not</u> the employee will be able to take a deduction on his or her tax return for the business use of the employee's car.

(Ex. 4-A, DOL Handbook, § 30c15 (underlining in original, bold added)).

The Tenth Circuit holds that an agency's handbook "is entitled to great deference insofar as it is interpreting the agency's own regulations."  *Newton* v. *Aviation Admin.*, 457 F.3d 1133, 1137 (10th Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997) and *Archuleta v. Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1184-85 (10th Cir. 2005)); *see also Belt vs. Emcare, Inc.,* 444 F.3d 403, 407-08 & 415-16 (2006), *cert. den.* 127 S.Ct. 349 (2006) (affording DOL Handbook controlling weight); *Bailey v. Youth Villages, Inc.*, 2009 U.S. Dist. Lexis 35532, at *17-18 & n.7 (W.D. Tenn. Apr. 20, 2009) (Ex. 8) (following 10th Circuit precedents in providing weight and deference to DOL Handbook).

Section 30c15 of the DOL Handbook is entitled to great deference and controlling weight as it is well-reasoned, persuasive and pertains directly to the issue here.  Section 30 of the DOL

Handbook interprets Part 531 of the DOL's own regulations and provides direction as to how to comply with those regulations, including 29 C.F.R. § 531.35 itself. Section 30c15 expressly identifies the issue addressed as "determin[ing] the costs when employees use their car on their employer's business in order to determine MW [minimum wage] compliance." *Id.* Notably, it specifically acknowledges that "car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants." *Id.*

**c.      In Any Event, Actual Vehicle Expenses Closely Approximate the IRS Standard Business Mileage Reimbursement Rate**

Plaintiffs' expert is Thomas Austin of Sierra Research. Ex. 3, ¶ 2. He has advised the major automobile manufacturers and the U.S. Environmental Protection Agency regarding vehicle costing and gas mileage. *Id.* Even if Defendants can avoid application of the IRS reimbursement rate, Mr. Austin is expected to testify that the actual cost of operating a vehicle for pizza delivery is roughly equivalent to the applicable IRS standard business mileage rate over the relevant limitations period. *Id.*, ¶ 3. Mr. Austin has also determined that Defendants' reimbursement rates are flawed for a variety of reasons, not the least of which is (1) their significant over-statement of the gas mileage that pizza delivery drivers experience compared to the assumed "MPG" ratings of newer vehicles considered by Defendants and (2) Defendants' gross underestimation of vehicle maintenance and repair costs. *Id.*, ¶ 3-5. These significant deviations from reality are due to the age of cars driven and driving characteristics of pizza delivery drivers. *Id.*

**d.      The Relevant Evidence Clearly Shows Plaintiffs Can Easily Establish Minimum Wage Violations**

The math is simple. For example, the net wages of a minimum-wage delivery driver reimbursed at $0.25 per mile below the IRS rate (which approximates actual vehicle cost) are

11

forced $0.25 below minimum wage every mile driven to deliver pizzas.

Here, Mr. Bass was nominally paid between $0.10 and $1.70 per hour above the federal

minimum.  Meanwhile, he was provided vehicle reimbursements of $0.17 to $0.31 per mile

below the IRS rate, which is roughly equal to actual costs.  He usually drove at least ten (10)

miles per hour on the job.  This resulted in violation of the federal minimum wage even before

considering non-automobile expenses, as follows:

| Time | Hourly Rate Paid | Federal Min. Wage | Amount Nominally Pd. Above Fed. Min. | Under Reimburse. Per Mile | Amount Under Reimbursed Per 10 Miles | Net Hourly Wage Pd. | Federal Min. Wage Deficit Per Hour |
|---|---|---|---|---|---|---|---|
| 9/05-9/3/06 | $5.25 | $5.15 | $0.10 | $0.17 | $1.70 | $3.55 | ($1.60) |
| 9/4/06-12/31/06 | $5.50 | $5.15 | $0.35 | $0.17 | $1.70 | $3.80 | ($1.35) |
| 1/1/07-7/23/07 | $6.85 | $5.15 | $1.70 | $0.21 | $2.10 | $4.75 | ($0.40) |
| 7/24/07-12/31/07 | $6.85 | $5.85 | $1.00 | $0.21 | $2.10 | $4.75 | ($1.10) |
| 1/1/08-6/1/08 | $6.85 | $5.85 | $1.00 | $0.23 | $2.30 | $4.55 | ($1.30) |

The evidence also clearly shows that Mr. Bass earned net wages below the Colorado minimum:

| Time | Hourly Rate Paid | Colorado Min. Wage | Amount Nominally Pd. Above Colo. Min. | Under Reimburse. Per Mile | Amount Under Reimbursed Per 10 Miles | Net Hourly Wage Pd. | Colorado Min. Wage Deficit Per Hour |
|---|---|---|---|---|---|---|---|
| 9/05-9/3/06 | $5.25 | $5.15 | $0.10 | $0.17 | $1.70 | $3.55 | ($1.60) |
| 9/4/06-12/31/06 | $5.50 | $5.15 | $0.35 | $0.17 | $1.70 | $3.80 | ($1.35) |
| 1/1/07-7/23/07 | $6.85 | $6.85 | $0.00 | $0.21 | $2.10 | $4.75 | ($2.10) |
| 7/24/07-12/31/07 | $6.85 | $6.85 | $0.00 | $0.21 | $2.10 | $4.75 | ($2.10) |
| 1/1/08-6/1/08 | $6.85 | $7.02 | -$0.17 | $0.23 | $2.30 | $4.55 | ($2.47) |

Similarly, Ms. Bass suffered federal and Colorado minimum wage violations as follows:

| Time | Hourly Rate Paid | Federal Min. Wage | Amount Nominally Pd. Above Fed. Min. | Under Reimburse. Per Mile | Amount Under Reimbursed Per 10 Miles | Net Hourly Wage Pd. | Federal Min. Wage Deficit Per Hour |
|---|---|---|---|---|---|---|---|
| 9/05-9/3/06 | $5.25 | $5.15 | $0.10 | $0.17 | $1.70 | $3.55 | ($1.60) |
| 9/4/06-12/31/06 | $5.50 | $5.15 | $0.35 | $0.17 | $1.70 | $3.80 | ($1.35) |
| 1/1/07-7/23/07 | $6.85 | $5.15 | $1.70 | $0.21 | $2.10 | $4.75 | ($0.40) |
| 7/24/07- | $6.85 | $5.85 | $1.00 | $0.21 | $2.10 | $4.75 | ($1.10) |

| Time | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12/31/07 | | | | | | | |
| 1/1/08-6/30/08 | $6.85 | $5.85 | $1.00 | $0.23 | $2.30 | $4.55 | ($1.30) |
| 7/1/08-7/23/08 | $6.85 | $5.85 | $1.00 | $0.31 | $3.10 | $3.75 | ($2.10) |
| 7/24/08-9/18/08 | $6.85 | $6.55 | $0.30 | $0.31 | $3.10 | $3.75 | ($2.80) |

| Time | Hourly Rate Paid | Colorado Min. Wage | Amount Nominally Paid Above Colo. Min. | Under Reimburse. Per Mile | Amount Under Reimbursed Per 10 Miles | Net Hourly Wage Pd. | Colorado Min. Wage Deficit Per Hour |
|---|---|---|---|---|---|---|---|
| 9/05-9/3/06 | $5.25 | $5.15 | $0.10 | $0.17 | $1.70 | $3.55 | ($1.60) |
| 9/4/06-12/31/06 | $5.50 | $5.15 | $0.35 | $0.17 | $1.70 | $3.80 | ($1.35) |
| 1/1/07-7/23/07 | $6.85 | $6.85 | $0.00 | $0.21 | $2.10 | $4.75 | ($2.10) |
| 7/24/07-12/31/07 | $6.85 | $6.85 | $0.00 | $0.21 | $2.10 | $4.75 | ($2.10) |
| 1/1/08-6/30/08 | $6.85 | $7.02 | -$0.17 | $0.23 | $2.30 | $4.55 | ($2.47) |
| 7/1/08-7/23/08 | $6.85 | $7.02 | -$0.17 | $0.31 | $3.10 | $3.75 | ($3.27) |
| 7/24/08-9/18/08 | $6.85 | $7.02 | -$0.17 | $0.31 | $3.10 | $3.75 | ($3.27) |

Defendants merely ask the Court to assume their per delivery reimbursement were adequate to fully reimburse Plaintiffs. This clearly fails to demonstrate a lack of genuine issues of material fact or that Plaintiffs cannot prove under-reimbursement.

Defendants' additional failures to reimburse for other job-related expenses such as such as cellular telephone services, uniform and special apparel items, uniform cleaning and maintenance, and maps, flashlights and batteries only pushed Mr. and Mrs. Bass' net wages further below both the federal and Colorado minimums.

These calculations are sufficiently precise to demonstrate minimum wage violations. The bases for these calculations are also sufficient to support a judgment under the FLSA. When an employer fails to comply with the FLSA's recordkeeping requirements, the employees are entitled to provide proof of their unpaid wages by "just and reasonable inference."[4] *Anderson v.*

---

[4] 29 C.F.R. § 516.2(a)(10) requires employees to keep records of all deductions from wages and, in individual employee records, the dates, amounts, and nature of the items which make up the total deductions. Similarly, C.R.S.A. § 8-4-103(4)(b) requires employers to provide employees written itemized pay statements reflecting all deductions. Defendants kept no such records here.

*Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Martin v. Tony & Susan Alamo Found.*, 952 F.2d 1050, 1052 (8th Cir. 1992) (same).[5]  The Tenth Circuit and its district courts have long held that the mere recollection and testimony of employees suffices to shift the burden to the defendant and to support judgment in FLSA claims. *See, e.g., Hodgson vs. Humphries*, 454 F.2d 1279, 1283 (10th Cir. 1972); *Joseph vs. Ray*, 139 F.2d 409, 412 (10th Cir. 1943); *McGrath vs. Central Masonry Corp.*, 2009 U.S. Dist. Lexis 94870, *19 (D. Colo. Sept. 29, 2009) (Ex. 9); *Adams vs. Kan. City Power & Light Co.*, 1985 U.S. Dist. Lexis 14995, *8-9 (D. Kan. Oct. 11, 1985) (Ex. 10) (FLSA judgment may be based on the employee's recollection and testimony). Here, Plaintiffs will rely on expert testimony and Defendants' business records in addition to their own testimony.  This evidence is more than enough to survive summary judgment.

Although Defendants recognize precedents holding that employee-paid expenses may unlawfully "cut into" the federal minimum wage, they rely on an absence of precedent that employee-paid expenses may unlawfully "cut into" Colorado's minimum wage.  However, Colorado law expressly adopts more stringent standards imposed under the FLSA.  Specifically, 22 of CCR 1103-1, § 22 mandates, "Whenever employers are subjected to both federal and Colorado law, the law providing greater protection or setting the higher standard shall apply." Thus, Colorado's standard cannot be less than the federal standard. *Id.*  Also, C.R.S.A. § 8-4-105 sets forth an exclusive list of permissible deductions from wage payments in Colorado. *Id.*, CCR 1103-1, § 9.  That list does not include employee-paid expenses. *Id.*

---

[5] "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act." *Anderson*, 328 U.S. at 687-88; *Martin* at 1052. "The solution … is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Id*, at 687. "Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act." *Id.* "If the employer does not rebut the employee's evidence, then damages may be awarded even though the result is only approximate." *Baker v. Barnhard Constr. Co.*, 146 F.3d 1214, 1220 (10th Cir. 1998).

Notably, the scheme advocated by Defendants would render Colorado's minimum wage meaningless.  A Colorado employer could simply avoid the state's minimum wage, which is higher than the federal minimum, by simply paying such rate to employees so long as its employees bear that employer's business expenses.  *See, e.g., Arriaga*, at 1237 (passing costs to employees undermines the minimum wage requirement).  Certainly, such scheming is contrary to both the spirit and letter of minimum wage protection for workers.[6]

Plaintiffs incorporate herein the following Section B to the extent it responds to Defendants' statements of fact and arguments regarding Counts I and II.

**C.**   **Count III:  Failure to Pay for Purchase, Maintenance and Cleaning of Uniforms and Special Apparel in Violation of Colorado Minimum Wage Law**

**1.**   **Burden of Proof**

Plaintiffs have the burden of proof by a preponderance of the evidence.

**2.**   **Elements Which Must Be Proven and Applicable Law**

Plaintiffs must prove that Defendants required wearing of a particular uniform or special apparel and did not pay for the purchase, maintenance or cleaning of such uniform or special apparel.  CCR 1103-1, § 11.

**3.**   **Response to Defendants' "Material Undisputed or Admitted Facts"**

Responses to Defendants' ¶¶ 1-27:  See above responses.

Response to Defendants' ¶¶ 28-29:  See responses to Defendants' ¶¶ 22-23 above.

**4.**   **Additional Relevant Facts**

G.   See Additional Relevant Facts A-F above.

H.   Plaintiffs did not wear any of Defendants' required uniform items or special

---

[6] Without prejudice to the foregoing, C.R.S.A. § 8-4-105(2) specifically bars any deduction which cuts into the federal minimum wage. *Id.*  As demonstrated above, Plaintiffs' unreimbursed job-related expenses clearly reduced their net wages below the federal minimum and therefore Colorado minimum wage violations occurred.

apparel on their personal time.  Ex. 1, ¶ 10; Ex. 2, ¶ 10.

5.     **All Required Facts Can Be Established**

Defendants' motion largely ignores their own written uniform policy, which expressly required Plaintiffs to wear logoed shirts, hats and jackets, all in Defendants' distinctive designs and color schemes.  The same written policy required Plaintiffs to wear "neatly pressed khaki or tan pants."  However, Defendants did not pay the cost of purchasing the "tan or khaki" pants required under their own policy.  Moreover, Defendants did not pay the cost of maintaining or cleaning any of these garments.  All such failures violated CCR 1103-1, § 11.

Defendants state that "[n]o special clothing other than a Papa John's shirt that can be regularly washed is part of the Standard Uniform for delivery drivers" and "[n]o special pressing … of the uniforms worn by Papa John's Colorado franchise employees is required."  Dfd's. Memo, pp. 21-22.  To the contrary, Defendants own policy clearly begins, "Standard Uniform consists of any style neatly pressed khaki or tan pants, the company issued polo shirt or approved logo wear shift/vest and a nametag (if shift-vest is not embroidered)."  That policy also states that "[h]ats are required if working in the production area," which is where Plaintiffs worked much of the time," and allows only "[a]ny style Papa John's hat."

Defendants attempt to escape their obligation under CCR 1103-1, § 11 to pay for maintenance and cleaning by arguing that the uniform items did not need special care.   This is a genuine issue of material fact.  In fact, Plaintiffs repeatedly had to pre-treat stains with stain removers.  Defendants own uniform policy requires that the required pants be "neatly pressed." These items also required special care in that, unlike regular wardrobe items, they had to be washed every shift or nearly every shift to comply with Defendant's neatness standards.

Defendants also attempt to escape their obligation to furnish the uniform items and

special apparel by arguing that such clothing is accepted as ordinary street wear.   However, the logoed shirts, hats and jackets in Papa John's company colors cannot be reasonably characterized as ordinary street wear.   Plaintiffs did not wear these garments on their personal time.   Still, CCR 1103-1 states that "clothing accepted as ordinary street wear … need not be furnished by the employer <u>unless</u> a special color, make, pattern, logo or material is required."   *Id.* (Emphasis added).   Here, the shirts, hats and jackets all come in special company colors and designs with Papa John's logos and Defendants require a special color of pants.   Notably khaki and tan are really the same "yellowish-brown" color.   *See* definitions of "khaki" and "tan" on www.dictionary.com.   Thus, all such items must be furnished by Defendants.   *See, e.g., Ayres vs. 127 Restaurant Corp.,* 12 F.Supp.2d 305, 310 (S.D.N.Y. 1998) (white shirt, khaki pants, black shoes, and black socks purchased by employees together with tie, vest, and apron provided by employer, may be a uniform where, although most of these items may be worn as part of an employee's ordinary wardrobe, specific colors were required); *Marshall vs. Ferry Point Skilled Nursing Care Facility*, 1986 U.S. Dist. Lexis 16114, *10 (D. Conn. Dec. 22) (Ex. 11) (requirement of white clothing, whether it be a pantsuit, skirt with blouse, or dress at discretion of individual employees, created a uniform requirement).

## C.   Count IV: Deprivation and Control of Tips

### 1.   Burden of Proof

Count IV essentially concerns Defendants' entitlement to use Colorado's tip credit toward state minimum wage.   Defendants have the burden of proving that they are actually entitled to take such credits.   *See, e.g., Bernal vs. Vankar Enterprises, Inc.*, 579 F.Supp.2d 804, 810 (W.D. Tex. 2008).

### 2.   Elements Which Must Be Proven and Applicable Law

Plaintiffs must prove that Defendants asserted control over their tips without posting required notices in their places of business <u>or</u> that Defendants required Plaintiffs to share their tips with food preparers.  C.R.S.A. § 8-4-103(6); CCR 1103-1, § 2.

**3.      Response to Defendants' "Material Undisputed or Admitted Facts"**

<u>Response to Defendants' ¶¶ 1-29</u>:  See above responses.

<u>Response to Defendants' ¶¶ 30 & 34</u>:  A genuine issue of material fact exists with regard to the matters set forth in ¶ 34 of Defendants' statement of facts.  Defendants required Plaintiffs to share tips received from large orders with food preparers.  Ex. 1, ¶ 16; Ex. 2, ¶ 16.

<u>Response to Defendants' ¶¶ 31-33</u>:  Genuine issues of material fact exist with regard to the matters set forth in ¶¶ 31-33 of Defendants' statement of facts.  All the policies identified by Defendants require reporting of tips for tax purposes and review of tip reporting forms for accuracy, but none of those policies prohibit Defendants from exercising control over tips or bar sharing of tips with food preparers.  Dfd.'s Ex. A-7, p. 7 & Ex. A-10.

**4.      Additional Relevant Fact**

I.      Defendants informed customers that delivery charges were to be provided to delivery drivers, but Defendants failed to distribute such funds to them.  Ex. 1, ¶ 17; Ex. 2, ¶ 17.

J.      Plaintiffs never established or agreed upon any tip sharing arrangement with any of their co-workers.  Ex. 1, ¶ 19; Ex. 2, ¶ 19.

K.      Defendants did not post in their places of business any notice to the general public that all presents, tips, or gratuities given by any patron of said business to an employee thereof are not the property of said employee but belong to the employer.  Ex. 1, ¶ 20; Ex. 1, ¶ 20.

**5.      All Required Facts Can Be Established**

Defendants have violated Colorado law regarding control over, and denial of, tips by (1)

requiring delivery drivers to share their tips with food preparers and (2) retaining delivery charges when Defendants 0told customers those charges would be provided to the drivers.

Plaintiffs present direct evidence that Defendants required them to share tips received from delivery of large orders with Defendants' food preparers.  Per to CCR 1103-1, § 2, such conduct nullifies Defendants' purported tip credit toward Colorado's minimum wage.  That section provides:

> "Employer-required sharing of tips with employees who do not customarily and regularly receive tips, such as management or food preparers, or deduction of credit care processing fees from tipped employees, shall nullify allowable tip credits toward the minimum wage authorized in section 3(c)."

*Id.* at § 3, subsection entitled "Tipped Employee."[7]  Defendants omit mention of this regulation, which Defendants have obviously violated.

Defendants have also retained delivery charges expressly represented by Defendants as funds to be provided to delivery drivers.  New York courts hold that the perception and expectations of a reasonable customers is dispositive as to whether a payment constitutes a tip and such perception is partially based on employer representations.  *Krebs vs. Canyon Club, Inc.*, 2009 WL 440903, *2-4 (N.Y. Sup. 2009); *Samiento vs. World Yacht, Inc.*, 10 N.Y.3d 70, 78-80 (2008).  In both *Samiento* and *Krebs*, the plaintiffs alleged that the employer told customers, or led them to believe, wait staff would receive part or all of service charges, but never distributed any part of the service charge to the wait staff.  Both courts therefore deemed the service charge to be a gratuity due the wait staff based on such employer representations and resulting customer understanding.  *Samiento.*, at 78-80; *Krebs*, at *2-4; *Ramirez vs. Mansions Catering, Inc.*, 2009 NY Slip Op 31100 (Apr. 27, 2009) (considering customer's interpretation of language used by

---

[7] Also, nullifying Defendants' tip credit renders the Colorado minimum wage violations pled in Count II even more obvious and greater damages result. *See, e.g., Lu vs. Jing Fong Restaurant, Inc.*, 503 F.Supp.2d 705, 711 (S.D.N.Y. 2007) (nullifying tip credit creates additional minimum wage liability).  However, Plaintiffs realize double recovery is not permitted.

employer).   Here, Plaintiffs have presented evidence showing that Defendants informed customers that delivery charges were to be provided to delivery drivers, but failed to distribute such funds to them.  This constitutes an additional and separate means of unlawful exercise of control over tips in violation of C.R.S.A. § 8-4-103(6).

Defendants cannot claim any of the statutory exemption for control over, or denial of tips. They failed to post any statutory notice under C.R.S.A. § 8-4-103(6).  Plaintiffs never preestablished any basis for tip sharing with other employers.  Moreover, Defendants admit they never required employees to share on such a preestablished basis.  Dfd.'s Memo, pp. 26-27.

### D.    Continuance of Motion Is Appropriate Under Fed. R. Civ. P. 56(f)

Finally, although the Motion should be denied for the reasons set forth above, at minimum it should be continued as Plaintiffs' counsel have not yet had fair opportunity to conduct merits discovery or to obtain an expert report on vehicle costs.  Ex. 3, ¶ 6.  Discovery does not close until July 30, 2010 and Plaintiffs' discovery to date has focused on conditional certification issues, not merits-based discovery.   Docket # 21; § 8(b); Ex. 3, ¶ 6.  Plaintiffs' expert, Tom Austin, is expected to testify that (1) the actual cost of operating a vehicle for pizza delivery is roughly equivalent to the applicable IRS rate, (2) Defendants' reimbursement rates equal approximately $0.25 to $0.30 per mile, or less, and (3) Defendants' reimbursement calculations are flawed and based on incorrect assumptions.  Ex. 3, ¶ 3-5.  Expert Disclosures are not due until May 1, 2010.  Docket # 21; § 8(d)(1).  With this additional discovery and evidence, Plaintiffs will be able to more fully respond.  Ex. 3, ¶ 7.

### II.    CONCLUSION

Plaintiffs have shown genuine issues of material fact on all claims and summary judgment should be denied.  At minimum, ruling should be deferred based on Rule 56(f).

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**
George A. Hanson (KS #16805)
Richard M. Paul III (KS #17778)
Jack D. McInnes (KS #21898)
460 Nichols Road, Suite 200
Kansas City, Missouri  64112
Telephone:   (816) 714-7100
Facsimile:   (816) 714-7101

and

**WEINHAUS & POTASHNICK**
_____/s Mark Potashnick_____
Mark A. Potashnick, MO Bar # 41315
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone:   (314) 997-9150
Facsimile:   (314) 997-9170

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies on the 2nd day of November, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Andrew D. Ringel
Edmund M. Kennedy
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, Colorado  80202

Attorneys for Defendants

_____/s/ Mark Potashnick_____
Attorney for Plaintiff