IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01614-REB-MEH

SHANE BASS, individually and on behalf of other similarly situated persons,

    Plaintiffs,

v.

PJCOMN ACQUISITION CORP.,
PJCOMN LLC, and
ESSENTIAL PIZZA, INC., d/b/a "PJCOMN,"

    Defendants.

## ORDER ON EMERGENCY MOTION FOR PROTECTIVE ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Plaintiffs' Emergency Motion for Protective Order and Corrective Notice [filed February 22, 2011; docket #129]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1C, the motion has been referred to this Court for disposition. For the reasons that follow, Plaintiffs' motion is **granted in part and denied in part**.

Plaintiff initiated this action on July 8, 2009. In essence, Plaintiff, on behalf of himself and others similarly situated, alleges that Defendants have failed to pay minimum wage and have failed to reimburse employees for job-related expenses in violation of the Fair Labor Standards Act ("FLSA"). *See* Complaint, docket #1, at 1-2. On September 15, 2010, the District Court granted the Plaintiffs' motion for conditional collective action and class action certification. *See* docket #66. In so doing, the District Court approved a Notice of Collective Action Lawsuit to be sent to potential collective/class action members, which contains contact information for the Plaintiffs' attorneys and a provision informing potential members how the attorneys will be paid for their services in the action. *See* docket #29-13 at 5.

Through the present motion, the Plaintiffs contend that certain employees of Defendants "have been attempting to scare potential class members into not exercising their right to join this case and ... falsely telling them that they will be responsible for attorneys' fees and costs if Plaintiffs do not prevail." Motion, ¶ 7, docket #129 at 3. Plaintiffs attach the affidavits of three employees each testifying that certain managers have, by their words or conduct, tried to discourage them from participating in the lawsuit. First, Cheryl Sundine, a delivery driver in Colorado, attests that she told District Manager Monte Woodward that she had joined the lawsuit and explained her reasons for doing so; in response, Mr. Woodward asked if she had read every word of the opt-in notice and said that she "should probably go home and read it again." Docket #129-3. Ms. Sundine contends that Mr. Woodward's manner indicated that she should change her mind about participating in the lawsuit. *Id.* She states that Mr. Woodward told her he directs employees to Training Manager Adam Burch to talk them out of joining the lawsuit. *Id.*

Likewise, Adam Ambrose, a delivery driver in Colorado, testifies that he heard Mr. Woodward warn not to "even mess with the lawsuit or you'll get fired," warn against even mentioning the lawsuit in the stores "or else," and say that he does not want people thinking they are going to sue the company and get a lot of money from it." Docket #134-1. Mr. Ambrose states that he "also heard store managers repeat similar remarks." *Id.* Finally, Stephen Olson, a delivery driver in Minnesota, testifies that he asked his boss, Jeff (General Manager), about the lawsuit and whether he should participate. Docket #129-4. According to Mr. Olson, Jeff responded "no," and said that if the plaintiffs do not win, they are liable for attorney's fees and expenses and even if the plaintiffs win, they will pay an "exorbitant amount" of attorney's fees. *Id.* Mr. Olson contends that he and other drivers are nervous about joining the lawsuit because of Jeff's statements. *Id.*

2

Plaintiffs argue that prevailing law favors restricting Defendants' communications with putative class members, particularly with respect to providing misleading information and discouraging members' participation in the lawsuit. Plaintiffs seek an order restricting Defendants' ex parte communications with potential members about the lawsuit, requiring that Defendants post a notice in all restaurants correcting false information, giving potential class members an additional thirty (30) days to opt into the case, requiring Defendants to produce immediately all communications sent to managers about this case, and awarding Plaintiffs' attorneys' fees and costs in filing the motion.

Defendants counter that Plaintiffs' disclosure of the alleged comments by three managers does not justify the expansive posting of a corrective notice in all restaurants. The managers alleged to have discouraged three employees from participating in the lawsuit have provided affidavits arguing that they did no such thing. For example, Monte Woodward, a District Manager in Colorado, attests that he has never been directed or asked to try to persuade any opt-in plaintiff to withdraw their consent to join the litigation, nor has he threatened to terminate anyone's employment or cut anyone's hours if they decided to join the lawsuit. Docket #140-2. He concedes that Ms. Sundine told him she was part of the lawsuit, but he contends he told her he did not want to discuss the litigation. *Id.* He states that he spoke with Adam Burch who informed him that Mr. Burch spoke with only one person about the lawsuit, but he testifies that he has never directed Mr. Burch to attempt to persuade employees not to join the lawsuit. *Id.*

Mr. Burch, a General Manager in Colorado, in turn, declares that he has never been directed or asked to persuade any opt-in plaintiff to withdraw their consent to join the litigation. Docket #140-3. He concedes that he spoke with employee Kourache Alizadeh about the lawsuit telling him to be sure about what he was signing and to get clarification on certain points, but did not attempt

3

to sway his decision. *Id.* Finally, Jeff Howard, a Store Manager in Minnesota, attests that he has never been directed or asked to try to persuade any opt-in plaintiff to withdraw their consent to join the litigation or to refrain from joining the lawsuit in the first place. Docket #140-4. He states that his wife is a delivery driver who received notification of the lawsuit and, together, they decided that she would not join for fear of liability for attorney's fees and costs from the litigation. *Id.* He concedes that a driver approached him for his opinion about the litigation, and he shared with the driver the conclusions he and his wife came to, but contends that he has spoken with no other driver about the lawsuit. *Id.* Mr. Howard attests that, both before and after his conversation with the driver, PJCOMN informed him that no managers are to discuss the litigation with employees. *Id.*

Defendants maintain that Plaintiffs' allegations concerning the managers' comments are too vague and did nothing to discourage the employees from participating, since it is apparent that each employee has joined the action. Defendants conclude that Plaintiffs' allegations are insufficient to justify the issuance of a broad and restrictive protective order in this case.

The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). Such protection is warranted, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). A party seeking a protective order under Rule 26(c) cannot sustain the burden of demonstrating good cause merely by relying upon speculation or conclusory statements. *Tolbert-Smith v. Bodman*, 253 F.R.D. 2, 4 (D.D.C. 2008). The movant must show specific facts demonstrating that the challenged discovery will result in a clearly defined and serious injury to the party seeking protection. *Id.*; *see also Exum v. United States Olympic Comm.*, 209 F.R.D. 201, 206 (D. Colo. 2002).

The Court recognizes that unilateral communications between a party and putative class

members have the potential for coercion. Indeed, particularly "[i]f the class and class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1202-03 (11th Cir. 1985) (citations omitted). As the *Kleiner* court noted, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal." *Id.* at 1203. Thus, the Court acknowledges Plaintiffs' heightened concern with respect to PJCOMN's alleged unilateral communications with its employees about the litigation. On the other hand, PJCOMN's managers' conversations with its employees, without more, does not necessarily warrant limitations on PJCOMN's speech as it relates to those employees. *See Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008). Thus, the Court must look to prevailing law for guidance as to whether to restrict PJCOMN's speech.

Courts have the authority to restrict communication between parties and putative class members if necessary to prevent abuse of the class action process. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). In *Gulf Oil*, a trial court's order required prior judicial approval of all communications by parties and their counsel with any actual or potential class members in an employment discrimination case. *Id.* at 103. The Supreme Court ruled that the trial court exceeded its authority in entering the order because the record revealed no grounds upon which the court could have determined it was necessary or appropriate to impose an order that "involved serious restraints on expression." *Id.* at 103-04. However, the *Gulf Oil* Court recognized the potential for abuses in class action litigation that may be implicated by communications with potential class members; thus, the Court acknowledged that courts may issue orders limiting certain communications. *Id.* at 104.

Since *Gulf Oil,* courts have established a standard for determining when a party's


communication to putative class members may be restricted; that is, the moving party must make an evidentiary showing of actual or threatened abuse by the party sought to be restrained. *See Kleiner*, 751 F.2d at 1205. The party moving for a protective order must make two showings: first, a communication has occurred or is threatened to occur and, second, the form of communication at issue is abusive and threatens the proper functioning of the litigation. *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1378 (2009). Even if the two showings are met, however, any resulting order "limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. The protective order must be carefully drawn so that it interferes with free speech as little as possible. *Id.* at 102 (citing *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977), *cert denied,* 434 U.S. 985 (1977) (court must give explicit consideration to the narrowest possible relief that would protect the respective parties)).

"Nevertheless, a limited restriction – such as precluding a defendant from soliciting class members to opt out of the litigation – will sometimes be justified." *Great Rivers Coop. of Southeastern Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995) (quoting Manual for Complex Litigation, Second § 30.24 at 232). Restrictive orders have been issued for communications that are misleading to class members regarding the litigation, communications that misrepresent the status or effect of the pending action, communications that coerce prospective class members into excluding themselves from the litigation, and communications that undermine cooperation with or confidence in class counsel. *See Hampton Hardware, Inc. v. Cotter & Co., Inc.,* 156 F.R.D. 630, 632 (N.D. Tex. 1994) (citations omitted); *see also Cox Nuclear Med. v. Gold Cup Coffee Servs.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003).

Here, it is undisputed that PJCOMN managers have communicated with putative class members about this litigation. Thus, Plaintiffs have satisfied their burden of showing that a particular communication has occurred or is threatened to occur. The issue here, then, is whether the record shows clear and specific evidence that any of the three communications challenged by Plaintiffs are abusive in that they "threaten the proper functioning of the litigation." *Ojeda-Sanchez*, 600 F. Supp. 2d at 1378. The Court will examine the context in which the communications were made and the effect of the communications to guide its determination.

First, the Court notes it is unclear from the record whether any of the managers' comments here were unsolicited and, in fact, the record reflects that at least two of the conversations with managers were initiated by the employees. *See* dockets #129-3 and #129-4. Thus, although the Court acknowledges that an employment relationship exists between the parties, which itself may increase the risk that communications will have a coercive effect (*see Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003)), the Court finds that the challenged communications were not necessarily unilateral or coercive, particularly considering there is nothing in the record reflecting that the employees have decided not to join the lawsuit as a result of the managers' comments.

Second, the Court finds that, even if true that Mr. Howard gave incorrect information to an employee concerning putative members' liability for attorney's fees and costs, the Notice of Collective Action Lawsuit provides accurate information concerning attorney's fees and costs in the litigation and contact information for Plaintiffs' counsel for any questions or concerns about the information contained in the notice. There is no evidence that the employee did not have access to the Notice. The Court cannot, and need not under the law, obligate each and every manager of the Defendants to provide accurate information concerning the lawsuit to putative members who may ask them questions.

7

Rather, the Court notes that Mr. Howard testifies he and other managers have been instructed by Defendants not to discuss the lawsuit with putative collective action members. Considering the exchanges as described by both employees and managers in their affidavits here, the Court finds that Defendants' instruction to their managers is likely the best course of action, at least through the pendency of the lawsuit and excepting any information properly exchanged through the discovery process. Therefore, pursuant to its authority to supervise the attorneys' and parties' conduct in this conditionally certified collective action (*see Belt*, 299 F. Supp. 2d at 667), the Court grants Plaintiffs' motion in part and directs Defendants to file with the Court a copy of the written instruction that was given to their managers concerning communications with putative members in this lawsuit. **A copy of the written instruction shall be filed with a Certificate of Compliance on or before March 28, 2011**.

All other requests by the Plaintiffs set forth in the present motion are denied. In sum, the Court finds that the challenged communications do not rise to the level of unilateral, unsolicited, abusive and/or coercive comments necessary to impose the Plaintiffs' requested restrictions against the Defendants. *See, e.g., Hampton Hardware*, 156 F.R.D. at 631-32 (restriction imposed for three unsolicited letters sent by defendant to putative plaintiffs discussing lawsuit's potential to harm the company and expressly urging employees not to join the lawsuit); *see also Belt*, 299 F. Supp. 2d at 668 (limiting communication between parties when unsolicited letter sent by defendant to putative plaintiffs contained, among other misleading statements, suggestions as to the lawsuit "affecting" plaintiffs' ongoing employment); *Jones*, 250 F.R.D. at 563 (restriction imposed where unsolicited letter sent by defendant to putative plaintiffs suggested that needed repairs would be made only if the customer opted out of the class).

Although the Court has found that the particular managers' communications challenged in

this matter do not necessitate a protective order, the Court reminds the parties that it is mindful of the risks of coercion and abuse in certain relationships, particularly in employment relationships, and urges the parties to be especially cognizant of any issues or problems that may arise as a result of the pending litigation. As always, the Court invites the parties to bring such issues or problems before the Court for swift resolution.

Accordingly, for the reasons stated above, this Court **grants in part and denies in part** Plaintiffs' Emergency Motion for Protective Order and Corrective Notice [filed February 22, 2011; docket #129] as set forth herein.

Dated at Denver, Colorado, this 14th day of March, 2011.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge