COMPROMISE AND SETTLEMENT AGREEMENT

This Compromise and Settlement Agreement ("Agreement") is entered into by and between, on the one hand, Shane Bass (a "Named Plaintiff") on behalf of himself, 493 other delivery drivers who filed consent to join forms in the Bass Lawsuit (as defined below) (who are "Opt-in Plaintiffs"), and each person who is a member of the Bass Class (defined below), along with Cheryl Sundine (a "Named Plaintiff") on behalf of herself and 338 other delivery drivers who filed consent to join forms in the Sundine Lawsuit (as defined below) (who are "Opt-in Plaintiffs"), along with Barbara Volney (a "Named Plaintiff") on behalf of herself and each person who is a member of the Volney Class (as defined below) (collectively these individuals and classes are referred to as "the Classes" or the "Class Members"), and, on the other hand, PJCOMN Acquisition Corporation, along with its agents and affiliates (including any successor under a plan of reorganization) (collectively the "Debtor") and H. Clifford Harris, IV ("Harris"), Brian Mills ("Mills") and Essential Pizza, Inc. ("Essential Pizza"). The Named Plaintiffs, Opt-in Plaintiffs, Settlement Class Members and the Debtor, Harris, Mills and Essential Pizza are referred to as the "Settling Parties".

## Defined Terms

Adversary Action.  Adversary Action shall mean that Adversary Case filed by the Named Plaintiffs against Debtor in the Bankruptcy Case setting forth the same primary claims as alleged in the Bass, Sundine and Volney Lawsuits and on behalf of the same Classes.

Agreement.  Agreement shall mean this Compromise and Settlement Agreement.

Bankruptcy Case.  Bankruptcy Case shall mean that voluntary petition filed on September 27, 2011 by PJCOMN Acquisition Corporation in the United States Bankruptcy Court for the District of Maryland for relief under Chapter 11 of the United States Bankruptcy Code, styled *In re PJCOMN Acquisition Corporation*, Case No. 11-29380.

Bankruptcy Court.  Bankruptcy Court shall mean the Court presiding over the Bankruptcy Case.

Bass Allocation. Bass Allocation shall mean $175,000 of the Gross Settlement Fund allocated to the claims plead in the Bass and Sundine Lawsuits.

Bass Class Members. Bass Class Members shall mean those 494 Opt-in Plaintiffs who joined the Bass Lawsuit under § 216(b) of the FLSA and the certified Rule 23 class including all current and former delivery drivers employed by Debtor in the State of Colorado since July 8, 2006.

Bass Lawsuit. Bass Lawsuit shall mean that class and collective action lawsuit in the United States District Court for the District of Colorado against PJCOMN Acquisition Corp., PJCOMN, LLC, and Essential Pizza, Inc., styled *Shane Bass, individually and on behalf of other similarly situated persons, v. PJCOMN Acquisition Corp. et al.*, Case No. 09-cv-01614.

Class Counsel. Class Counsel shall mean Stueve Siegel Hanson LLP, Weinhaus & Potashnick, Nichols Kaster, PLLP, and Nichols Kaster, LLP.

Classes or Class Members. Classes or Class members shall mean Shane Bass on behalf of himself, 493 other delivery drivers who filed consent to join forms in the Bass Lawsuit and each person who is a member of the Bass Class, along with Cheryl Sundine on behalf of herself and 338 other delivery drivers who filed consent to join forms in the Sundine Lawsuit, along with Barbara Volney on behalf of herself and each person who is a member of the Volney Class.

Class Member List. Class Member List shall mean a list of the names and last known addresses of the Settlement Class Members and Opt-in Plaintiffs which shall also include each Settlement Class Member's and Opt-in Plaintiff's first and last day of employment as a delivery driver.

Class Settlement Notice. Class Settlement Notice shall mean the notice required pursuant to Federal Rule 23 and Bankruptcy Rule 7023.

Debtor. Debtor shall mean PJCOMN Acquisition Corporation along with its agents and affiliates.

Effective Date. Effective Date shall mean the later of (i) the expiration of the time for filing of an appeal from the Bankruptcy Court's entry of a Final Approval Order or (ii) if

a timely appeal is filed, the final resolution of that appeal (including any requests for rehearing and/or petitions for review).

       Fairness Hearing.  Fairness Hearing shall mean the hearing to be conducted by the Bankruptcy Court after completion of the notice procedures set forth herein, to determine the fairness, adequacy and reasonableness of the terms of this Agreement.

       Final Approval Order.  Final Approval Order shall mean the Order of the Bankruptcy Court subsequent to the Fairness Hearing approving this Agreement as well as the payment of attorneys' fees and costs to Class Counsel and the Service Awards in the amount approved by the Court and dismissing the Adversary Action with prejudice.

       Global Settlement Agreement.  Global Settlement Agreement shall mean the settlement agreement attached to and the subject of the Global Settlement Motion (as is more completely described below) between Debtor, and Essential Pizza, Inc., H. Clifford Harris, Brian Mills, Papa John's International, Inc., (individually and together with its affiliates and subsidiaries, including but not limited to, Capital Delivery, Ltd., PJ Food Service, Inc., Papa Card, Inc., Papa John's National Marketing Fund, Inc., Papa John's USA, Inc., and Preferred Marketing Solutions, Inc.), GECPAC Investment, Inc., GE Capital Corporation, the committee of unsecured creditors in the Bankruptcy Case and the State of Colorado Department of Revenue.

       Global Settlement Motion.  Global Settlement Motion shall mean Debtor's Motion for Approval of Settlement and Compromise between Debtor and Parties in Interest filed in the Bankruptcy Case on January 23, 2012 (Doc. 237).

       Gross Settlement Fund.  Gross Settlement Fund shall mean the amount of $300,000 that the Debtor has agreed to pay herein to resolve the Settled Claims.

       Named Plaintiff.  Named Plaintiff(s) shall mean Shane Bass, Cheryl Volney and/or Barbara Volney as the case may be.

       Opt-in-Plaintiffs.  Opt-in-Plaintiffs shall mean Shane Bass on behalf of himself, 493 other delivery drivers who filed consent to join forms in the Bass Lawsuit along with Cheryl

Sundine on behalf of herself and 338 other delivery drivers who filed consent to join forms in the Sundine Lawsuit.

Opt-out-Request. Opt-out-Request shall mean a letter by e-mail or first class mail sent by a Settlement Class Member who elects to opt out listing their name, address and states their desire to be excluded from the Settlement.

Opt-out-Bar Date. Opt-out-Bar Date shall mean a date sixty (60) calendar days after the date Class Counsel sends the Class Settlement Notice to the Settlement Class Members.

Preliminary Approval Motions. Preliminary Approval Motions shall mean those motions filed in the Bankruptcy Court pursuant to Bankruptcy Rule 9019, Federal Rule 23 and Bankruptcy Rule 7023 seeking approval of this Agreement subject to a final Fairness Hearing.

Preliminary Approval Orders. Preliminary Approval Orders shall mean those orders approving this Agreement subject to a final Fairness Hearing.

Service Awards. Service Awards shall mean those one-time payments of $500 to each of the Settlement Class Representatives and to Named Plaintiff Cheryl Sundine, payable from the Gross Settlement Fund, for their services as Class Representatives and/or Named Plaintiffs in connection with the prosecution and settlement of the actions.

Settled Claims. Settled Claims shall mean those claims of the Class Members resolved by this Agreement including the claims that were raised and could have been raised in the Adversary Action and the claims raised and that could have been raised in the Bass, Sundine and Volney Lawsuits against the Debtor, Harris, Mills and Essential Pizza.

Settlement Class Members. Settlement Class Members shall mean the Bass Class Members and the Volney Class Members collectively who have not opted-out in the manner provided for in this Agreement.

Settlement Class Representatives. Settlement Class Representatives shall mean Shane Bass and Barbara Volney together.

Settlement Payment. Settlement Payment(s) shall mean any payment made in resolution of the Settled Claims from the Gross Settlement Fund including the Individual Gross and Net Allocations as defined in Sections C2 and C3, Service Awards and attorneys' fees.

Sundine Lawsuit.  Sundine Lawsuit shall mean that collective action lawsuit in the United States District Court for the District of Colorado against Cliff Harris and Brian Mills, styled *Cheryl Sundine, individually and on behalf of others similarly situated v. Cliff Harris et al.*, Case No. 1:11-cv-01204.

Volney Allocation.  Volney Allocation shall mean $125,000 of the Gross Settlement Fund allocated to the claims plead in the Volney Lawsuits.

Volney Class Members.  Volney Class Members shall mean those individuals in the Volney Lawsuit consisting of all individuals employed by PJCOMN Acquisition Corp. as pizza delivery drivers in Minnesota at any time from September 8, 2007 until such time as judgment is entered and for whom class certification was sought.

Volney Lawsuit.  Volney Lawsuit shall mean that class action lawsuit originally filed in the District Court, First Judicial District of Dakota County, Minnesota against PJCOMN Acquisition Corp., subsequently removed, subsequently amended and currently styled *Barbara Volney, individually and on behalf of the Rule 23 Class v. PJCOMN Acquisition Corp et al.*, Case No. 10-cv-4119.

Recitals

1.     The Debtor operates Papa John's pizza delivery franchises in the states of Colorado and Minnesota.  This Agreement resolves claims raised or that could have been raised in the Bass, Sundine and Volney Lawsuits.

2.     The Bass Lawsuit filed on July 8, 2009 alleges that Debtor and co-defendants forced delivery drivers to incur unreimbursed work-related expenses that, when deducted from the cash wages paid to them, caused their effective wage to fall below minimum wage, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* and the Colorado Minimum Wage of Workers Act, C.R.S.A. § 8-6-101, *et seq.*  On September 15, 2010, the court conditionally certified the Bass Lawsuit as a collective action under the FLSA, 29 U.S.C. § 216, and directed that notice be mailed to affected employees, permitting them the right to join the case.  In total, 494 Opt-in Plaintiffs joined the Bass Lawsuit.  On June 1, 2011, the court also certified a class action under Fed.R.Civ.P. 23 that included all Bass Class Members.  Notice was

then mailed providing Bass Class Members an opportunity to request exclusion from the class. To date, no Bass Class Member requested exclusion. The Debtor and co-defendants have, at all times, denied liability.

3.      The Volney Lawsuit originally filed on September 8, 2010 alleges that Debtor unlawfully retained gratuities of its delivery drivers in violation of Minn. Fair Labor Standards Act, Minn. Stat. § 177.21 *et seq*. On April 22, 2011, Volney moved for class certification under Fed.R.Civ.P. 23 of all individuals employed by Debtor as pizza delivery drivers in Minnesota at any time from September 8, 2007 until such time as judgment is entered A class has not yet been certified in the Volney Lawsuit as a result of the stay imposed upon the bankruptcy filing by the Debtor. The Debtor and co-defendant have, at all times, denied liability.

4.      The Sundine Lawsuit filed on May 4, 2011 alleges that Harris and Mills, as joint employers of the delivery drivers of Debtor, are jointly and severally liable for the unpaid minimum wages, liquidated damages, attorney's fees and costs pled in the Bass Lawsuit under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. Since the Sundine Lawsuit was filed, 339 employees have joined it by filing consent to join forms pursuant to 29 U.S.C. § 216(b). No class has been sought or certified in the Sundine Lawsuit to date. The defendants have, at all times, denied liability.

5.      On September 27, 2011 the Debtor filed the Bankruptcy Case. The Debtor is operating its business and managing its property as a debtor in possession under §§ 1107(a) and 1108 of the Bankruptcy Code. Although only Debtor filed a petition for bankruptcy, the Bankruptcy Case complicates the lawsuits against the remaining defendants in the Bass, Sundine and Volney Lawsuits because Debtor is the operating entity and named employer for all delivery drivers and, as such, possesses much of the discovery needed to prosecute the cases against the remaining defendants.

6.      On February 9, 2012, Named Plaintiffs filed the Adversary Action in the Bankruptcy Case setting forth the same claims alleged in the Bass, Sundine, and Volney Lawsuits. The Adversary Complaint includes all Opt-in Plaintiffs, who filed consent to join forms in the Bass and Sundine Lawsuits (copies of which are attached to the Adversary

Complaint), all Bass Class Members, and all Volney Class Members. The purpose of filing the
Adversary Complaint is to effect a settlement of all claims brought in the Bass, Sundine and
Volney Lawsuits as part of the Bankruptcy Case and to effect appropriate notice of the
settlement to the Class Members and interested parties pursuant to Federal Rule 23 and
Bankruptcy Rules 7023 and 9019 as further detailed in the terms set out below.

      7.     There are significant, complex legal, and factual issues raised in the Bass,
Sundine and Volney Lawsuits regarding the liability of the Debtor and the co-defendants as
alleged in those Lawsuits. The Debtor and co-defendants dispute liability in each of the Bass,
Sundine and Volney Lawsuits and further assert numerous affirmative defenses. Debtor and co-
defendants also contend that, even if liability were found, the amount of damages would be far
less than the amount Plaintiffs claim.

      8.     To avoid extensive, costly litigation over these issues, the Debtor and the
Named Plaintiffs through Class Counsel, engaged in negotiations regarding a possible resolution
of the Bass, Sundine and Volney Lawsuits. As a result of those negotiations, the Settling Parties
have agreed to fully and finally compromise, settle, and resolve any and all demands, claims,
damages, penalties, and causes of action for unpaid minimum wages and unlawfully retained
gratuities that were asserted or could have been asserted in the Bass, Sundine and Volney
Lawsuits on the terms set forth below.

      9.     This Agreement is contingent on approval by the Bankruptcy Court of the
Global Settlement Agreement by the Bankruptcy Court, the parties' execution thereof and the
sale of the Debtor's assets as described in the Settlement Agreement as it may be amended from
time to time with approval of the Bankruptcy Court. Pursuant to the current version of the
Global Settlement Agreement, the Release Effective Date must occur, if at all, prior to April 30,
2012. No payments may be made pursuant to this Agreement prior to the later of the dismissals
of the Bass, Sundine and Volney Lawsuits and the Release Effective Date as defined in the
Global Settlement Agreement.

Terms and Conditions of Settlement

**A.      Settlement Amount and Preliminary Approval Procedure**

1.      Subject to both the dismissals of the Bass, Sundine and Volney Lawsuits and the establishment of a Release Effective Date as defined in the Global Settlement Agreement the Debtor agrees to pay the total amount of $300,000 to resolve the Settled Claims, which shall include all amounts to be paid in exchange for this settlement and compromise, including, without limitation, any attorneys' fees and costs that may be awarded to counsel for the Class Members and service awards that may be awarded to the Named Plaintiffs, including the costs of administration of the settlement. The Gross Settlement Fund also includes an amount equal to the employer's share of taxes due on any Settlement Payments treated as wages (as defined below) that are distributed to Settlement Class Members under this Agreement.

2.      This Agreement is subject to, and conditioned on, entry of the Final Approval Order by the Bankruptcy Court approving the Settlement Agreement under the FLSA, Federal Rule 23 and Bankruptcy Rule 7023, and an Order of the Bankruptcy Court approving this Agreement under Bankruptcy Rule 9019 and Local Rule 9019-1.

3.      Within five days of the execution of this Agreement, the Debtor will file a motion to approve this Agreement under Bankruptcy Rule 9019 as modified by Local Rule 9019-1 in both the Bankruptcy and Adversary Cases (the "9019 Motion"). At the same time, the Named Plaintiffs will file, in the Adversary Action, a consent motion for preliminary approval of settlement under Federal Rule 23 and Bankruptcy Rule 7023 (the "Rule 23 Motion") seeking an order in the Adversary Action (the combined Rule 23 and 9019 Motions). The 9019 and Rule 23 Motions are collectively referred to in this Agreement as the "Preliminary Approval Motions". The Settling Parties will make an effort to have the Preliminary Approval Motions heard simultaneously by the Bankruptcy Court. The Preliminary Approval Motions will request that the Bankruptcy Court set a hearing, to be conducted after completion of the notice procedures set forth in paragraphs B.1 through B.4 below, to determine the fairness, adequacy and reasonableness of the terms of this Agreement consistent with Federal Rule 23, Bankruptcy Rule 7023, Bankruptcy Rule 9019 and Local Rule 9019-1.

4.　　The Settling Parties agree, for settlement purposes only, that the Bankruptcy Court may certify the following classes under Federal Rule 23 and Bankruptcy Rule 7023:

- "All current and former delivery drivers employed by PJCOMN Acquisition Corp. in the State of Colorado at any time from July 8, 2006 until September 27, 2011" ("Bass Class"); and

- "All current and former delivery drivers employed by PJCOMN Acquisition Corp. in the State of Minnesota at any time from September 1, 2007 until September 27, 2011" ("Volney Class").

5.　　The Settling Parties agree, for settlement purposes only, that the Bankruptcy Court may certify a class of Opt-in Plaintiffs under the FLSA, 29 U.S.C. § 216(b), which shall include all Opt-in Plaintiffs who filed consent to join forms in the Bass Lawsuit and/or the Sundine Lawsuit as attached to the Adversary Complaint.

6.　　The Debtor consents to the appointment Class Counsel for the Settlement Class Members, in pursuing and settling the Settled Claims.

7.　　Class Counsel has informed the Debtor that they will seek Bankruptcy Court approval of attorneys' fees and reimbursement of costs and expenses in the amount of $100,000 (33 1/3% of the Gross Settlement Fund) payable from the Gross Settlement Fund through the Rule 23 and/or 9019 Motions. The Debtor agrees not to oppose a request for attorneys' fees and for reimbursement of costs and expenses by Class Counsel up to $100,000 provided it is payable exclusively from the Gross Settlement Fund. The payment to Class Counsel of attorneys' fees and costs from the Gross Settlement Fund, as may be awarded by the Bankruptcy Court, shall constitute payment in full of all compensation due Class Counsel for services rendered on behalf of the Class Members.

8.　　The Settling Parties agree, for purposes of settlement only, that Shane Bass is an adequate class representative of the Bass Class and Barbara Volney is an adequate class representative of the Volney Class (jointly "Settlement Class Representatives").

9.　　Class Counsel has informed the Debtor that they will seek Bankruptcy Court approval of the Service Awards through the Rule 23 and/or 9019 Motions. The Debtor

agrees not to oppose a request for Service Awards up to $1,500 in total provided that it is payable exclusively from the Gross Settlement Fund.

10.     Class Counsel shall be responsible for printing and disseminating the Class Settlement Notice and for distributing checks from the Debtor representing the Settlement Payments to Settlement Class Members and Opt-in Plaintiffs. Class Counsel shall incur all costs associated with printing and mailing Class Settlement Notice and distributing to Settlement Class Members and Opt-in Plaintiffs the Settlement Payments. The Debtor shall be responsible for the cost of printing the checks.

11.     The Debtor shall be responsible for giving notice to the appropriate state and federal officials under Section 1715(b) of the Class Action Fairness Act of 2005.

**B.     Notice Procedures, Opt Outs and Final Approval Procedure**

1.     To the extent not already provided, the Debtor agrees to deliver via electronic mail to Class Counsel, within five (5) business days following the entry of the Preliminary Approval Orders described in paragraph A.2, the Class Member List. The Class Member List shall be in an Excel file format.

2.     Class Counsel shall send each Class Member and Opt-in Plaintiff a Class Settlement Notice, subject to any modifications ordered by the Bankruptcy Court, via e-mail or first-class mail addressed to the Class Members and Opt-in Plaintiffs at the addresses in the Class Member List, or a more recent address, no later than ten (10) business days after the Bankruptcy Court's Preliminary Approval Order.

3.     Any Settlement Class Member who elects to Opt Out must send an Opt-Out Request not later than the Opt-Out Bar Date. Any Opt-Out Request received by Class Counsel bearing a postmark on or before the Opt-Out Bar Date will be deemed timely. Any Settlement Class Member who returns the Opt-Out Request by the Opt-Out Bar Date shall be deemed to have "Opted Out." Opt-in Plaintiffs shall not be eligible to Opt-Out. At least three (3) business days after the Opt-Out Bar Date, Class Counsel shall send to counsel for the Debtor, via electronic mail, a list of the Class Members who have Opted Out.

4.      Each Class Member who does not send an Opt-Out Request by the Opt-Out Bar Date and each Opt-in Plaintiff will be bound by the terms of this Agreement.

5.      If any Class Member, other than an Opt-in Plaintiff, timely and properly opts out of the proposed Bass Class or Volney Class, then that Class Member's rights and obligations will be unaffected by this Agreement and that Class Member shall have the same rights and obligations as he or she would have had if the Adversary Action had never been filed and this Agreement had never been executed.  Any Class Member who opts out shall not have an allowed claim against the Debtor by reason of this Agreement, but shall retain his or her rights against the Debtor, if any.  The Debtor reserves all rights against any Class Members who opts out, including, without limitation, the right to object to their claims, if any.

6.      Prior to the Fairness Hearing, Class Counsel or counsel for the Debtor will file and upload a proposed Final Approval Order, to be entered in the Bankruptcy Case.  Within ten (10) days of the Effective Date, the Settling Parties shall jointly move to dismiss with prejudice the claims in the Bass Lawsuit, the Sundine Lawsuit, and the Volney Lawsuit, in substantially the same form as Exhibit A, except that the pleading shall be modified to conform to the applicable captions and local rules for each case.  The Parties shall further submit a proposed order in the Bass, Sundine and Volney Lawsuits for dismissal in substantially the same form as Exhibit B, except that the proposed order shall be modified to conform to the applicable captions and local rules for each case.

7.      If the Bankruptcy Court for any reason does not approve this Agreement and does not enter the Final Approval Order consistent with the material terms of this Settlement or if the Global Settlement Agreement is not approved by the Bankruptcy Court or is not effective because the Release Effective Date as defined therein has not been established on or before April 30, 2012, then:

a.      This Agreement, the recitals contained herein and any certification of the Bass Class and the Volney Class by the Bankruptcy Court shall be deemed null and void *ab initio* and shall be of no force or effect whatsoever, and the Settling Parties and Settlement

Class Members shall be deemed to have reverted to their respective status as of the date and time immediately prior to the execution of this Agreement;

b.      The Debtor, or any other party-in-interest shall be free to object to and/or defend against the Settled Claims or any other claims asserted by the proposed Settlement Class Members. The execution of this Agreement by the Debtor does not waive or release any defense or objection to any claims asserted or that may be asserted by the proposed Settlement Class Members;

c.      Neither this Agreement, nor any of the statements contained herein, shall be admissible in any proceeding involving the Parties for any purpose whatsoever nor shall any Party refer to or utilize this Agreement in any proceeding involving the Parties, except one to enforce its terms; and

d.      Neither the Preliminary Approval Motions nor any of the pleadings filed in support of the Preliminary Approval Motions shall be admissible in any proceeding involving the Parties.

C.      **Settlement Payments**

1.      The Debtor will only make the agreed Settlement Payment subsequent to the later of (a) the dismissal of the Bass, Sundine and Volney Lawsuits and (b) the Release Effective Date as defined in the Global Settlement Agreement and in accordance with the time table set forth below.

2.      $175,000 of the Settlement Amount shall be allocated to the claims pled in the Bass and Sundine Lawsuits and $125,000, shall be allocated to the claims pled in the Volney Lawsuit. Attorney's fees, costs and Service Awards approved by the Bankruptcy Court shall be deducted separately from each allocation, i.e., an award up to one-third of the Bass Allocation made to Stueve Siegel Hanson LLP and Weinhaus & Potashnick shall be deducted from the Bass Allocation; and an award up to one-third of the Volney Allocation made to Nichols Kaster PLLP in the Volney Lawsuit shall be deducted from the Volney Allocation. Once attorney's fees, costs and Service Awards approved by the Court are deducted, the amount remaining in each allocation shall be the "Total Net Allocations." Following these deductions, Individual Gross

Allocations to Settlement Class Members and Opt-in Plaintiffs shall be made according to the following formula:

(a)     each Settlement Class Member and Opt-in Plaintiff shall be allocated a number of "Work Weeks", as calculated by the difference between the first day of employment with the Debtor as a delivery driver and the last day of employment with the Debtor as a delivery driver, except that the last day of employment shall not be any later than September 27, 2011. Employment dates shall be based on information supplied by either the Debtor or by the Settlement Class Members and Opt-in Plaintiffs at Class Counsel's discretion.

(b)     the Total Net Allocation for the Bass Allocation shall then be divided by the total number of Work Weeks of Bass Class Members and Opt-in Plaintiffs, which shall result in the "Bass Work Week Allocation;" the Total Net Allocation for the Volney Allocation shall then be divided by the total number of Work Weeks of the Volney Class Members to produce the "Volney Work Week Allocation."

(c)     Each Settlement Class Member's and Opt-in Plaintiff's "Individual Gross Allocation" shall then be calculated by multiplying his or her total number of Work Weeks by the applicable work week allocation. For Bass Class Members and Opt-in Plaintiffs, the applicable work week allocation shall be the Bass Work Week Allocation. For Volney Class Members, the applicable work week allocation shall be the Volney Work Week Allocation. In the event an Opt-in Plaintiff (or Bass Class Member) is also a Volney Class Member he or she shall be allocated a sum from both the Volney Allocation and Bass Allocation (e.g., if the Bass Work Week Allocation is $10 and the Volney Workweek Allocation is $10, someone with 100 Work Weeks who is both an Opt-in Plaintiff and a Volney Class Member would be allocated $2,000, with $1,000 being drawn from the Volney Allocation and $1,000 drawn from the Bass Allocation).

3.     Within five (5) business days of the later of (a) the dismissal of the Bass, Sundine and Volney Lawsuits and (b) the Release Effective Date as defined in the Global Settlement Agreement, Class Counsel will deliver a list to the Debtor showing the Bass Allocation, Volney Allocation, and Individual Gross Allocation for each Settlement Class

Member and Opt-in Plaintiff. When added to any attorney's fees and costs and Service Awards awarded by the Bankruptcy Court, the Gross Allocations shall total and not exceed $300,000. Within five (5) business days thereafter, the Debtor shall calculate and return to Class Counsel a copy of the list modified to show "Individual Net Allocations" for each Settlement Class Member and Opt-in Plaintiff ("Final Allocation List"), which shall be equal to the Individual Gross Allocation less any tax withholdings as specified herein and Debtor's share of all applicable federal, state and local taxes. The Debtor is responsible for accurately calculating the applicable federal, state and local employee and employer's payroll taxes. Within ten (10) days thereafter, the Debtor shall remit to Stueve Siegel Hanson LLP (1) the amount of attorney's fees and costs awarded to Stueve Siegel Hanson and Weinhaus & Potashnick by the Bankruptcy Court by wire transfer, and (2) checks made payable to the Named Plaintiffs, each Bass Class Member and Opt-in Plaintiff in amounts equal to the Individual Net Allocation for each Settlement Class Member and Opt-in Plaintiff identified on the Final Allocation List. At the same time, the Debtor shall remit to Nichols Kaster PLLP (1) the amount of attorney's fees and costs awarded to Nichols Kaster by the Bankruptcy Court by wire transfer, and (2) checks made payable to each Volney Class Member identified on the Final Allocation List in amounts equal to their Individual Net Allocation. In total, the amount wired to Class Counsel and the checks to Class Members by the Debtor shall be $300,000, less the employee's and Debtor's share of payroll taxes.

4.    Settlement Payments from any checks that have not been negotiated within 180 days of issuance shall be turned over to the appropriate unclaimed property department of the last known state of residence for the Settlement Class Member and Opt-in Plaintiff.

5.    For purpose of calculating applicable taxes, the Parties agree (i) that 100% of the Settlement Payments drawn from the Bass Allocation shall constitute reimbursement for automobile- and other work- related expenses and, for tax purposes, treated in the same manner as vehicle reimbursements paid in the ordinary course of Debtor's business, and (ii) that 50% of the Settlement Payments drawn from the Volney Allocation shall constitute wages reportable on

IRS Form W-2 and 50% as penalties reportable on IRS Form 1099. All Service Awards shall constitute non-wage income reportable on IRS Form 1099. The Debtor shall be responsible for remitting the employee and employer share of payroll taxes to the appropriate governmental authorities.

6.      The Debtor shall also provide to Class Counsel an IRS Form 1099 for all attorney's fees and costs approved by the Bankruptcy Court and paid by the Debtor.

**D.      Release of Claims**

1.      Except for the rights arising out of, provided for, or reserved in this Agreement, upon the payment of the Settlement Amount, the Named Plaintiffs, Settlement Class Members and Opt-in Plaintiffs, for and on behalf of themselves, and their respective successors and assigns (collectively, the "Releasing Parties"), do hereby fully and forever release and discharge the Debtor, the Debtor's estate and its respective officers, directors, shareholders, agents, employees, affiliated companies, lenders, franchisors Harris, Mills and Essential Pizza and all of their respective predecessors, successors and assigns whether or not specifically named herein (collectively, the "Released Parties"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and otherwise, whether known, unknown, anticipated, suspected or disclosed, which the Releasing Parties have against the Released Parties, for the claims asserted in the Bass Lawsuit, Sundine Lawsuit, and Volney Lawsuit and any wage and hour claims that arise from the same factual predicate as the claims in those lawsuits. This release extends to any claims accruing before September 27, 2011.

2.      Opt-in Plaintiffs and Bass Class Members further agree that entry of the Final Approval Order by the Bankruptcy Court, unless successfully appealed, operates as res judicata and collateral estoppel of the certified class and collective action claims pending in the Bass Lawsuit that accrued through September 27, 2011.

**E.      Additional Terms**

1.      The Settling Parties agree that they are compromising and settling disputed claims. Other than as set forth herein, each of the Settling Parties shall bear its own

attorney's fees, expenses and court costs. Each of the Settling Parties agrees it shall not commence or continue any contested matter, adversary proceeding, lawsuit, or arbitration that contests, disputes, or is inconsistent with any provision of this Agreement.

2.      This Agreement is intended to settle and dispose of all claims that are contested and denied and that relate to claims pled in the Bass, Sundine and Volney Lawsuits. Nothing in this Agreement shall be construed as an admission by the Debtor of any liability or wrongdoing of any kind, and the Debtor specifically denies any such liability or wrongdoing.

3.      Neither this Agreement nor any of its provisions, nor evidence of any negotiations or proceedings related to this Agreement, shall be offered or received in evidence in the Bankruptcy Case, or any other action or proceeding, as an admission or concession of liability or wrongdoing of any nature on the part of any of the Released Parties, or anyone acting on their behalf. Nothing herein shall prevent any Settling Party from seeking to offer this Agreement in evidence after the entry of the Final Approval Order for the purpose of enforcing the terms of the Agreement.

4.      Unless otherwise provided herein, all notices or other communications given pursuant to this Agreement shall be in writing and sent via first class mail. All notices or other communications delivered via mail shall be deemed to have been delivered as of the third business day after mailing by United States first class mail, addressed to the mailing addresses listed below. All notices or other communications delivered via electronic mail shall be deemed to have been delivered as of the first business day after sending by electronic mail, addressed to the email addresses listed below:

To the Settlement Classes:

Richard Paul III, Esquire
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
paul@stuevesiegel.com

Matthew Helland, Esquire
Nichols Kaster PLLP
One Embarcadero Center, Suite 720
San Francisco, CA 64111
helland@nka.com

To the Debtor:

Lawrence J. Yumkas, Esquire
Logan, Yumkas, Vidmar & Sweeney, LLC
2530 Riva Road, Suite 400
Annapolis, Maryland 21401
lyumkas@loganyumkas.com

5.      This Agreement shall be binding on and shall inure to the benefit of the predecessors, successors and assigns of each of the Settling Parties to the fullest extent under the law.

6.      This Agreement shall be construed pursuant to the laws of the State of Maryland and the United States Bankruptcy Code.

7.      This Agreement and the Exhibits hereto represent the entire agreement and understanding between the Settling Parties as to the subject matter hereof and supersede all previous agreements and discussions between the Settling Parties as to the matters herein addressed. This Agreement can be amended or modified only in writing and signed by all the Settling Parties, subject to any necessary Bankruptcy Court or other approval.

8.      The Settling Parties may not waive any provision of this Agreement except by a written agreement that all of the Settling Parties have signed. A waiver of any provision of this Agreement shall not constitute a waiver of any other provision.

9.      This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute but one agreement. This Agreement may be executed by facsimile or PDF and such facsimile or PDF signature shall be treated as an original signature hereunder.

10.     This Agreement has been prepared by the joint efforts of the respective attorneys for each of the Settling Parties. Each and every provision of this Agreement shall be construed as though each and every party hereto participated equally in the drafting hereof. As a result of the foregoing, any rule that the document is to be construed against the drafting party shall not be applicable.

11.     This Agreement is subject to and contingent on approval by the Bankruptcy Court and, thus, the Bankruptcy Court shall have exclusive jurisdiction to determine

8514                    Jones 3rd Floor south                    JONES NET                    09:33:44 a.m.    06-18-2012        1 / 1
06/18/2012  10:36  FAX  3149929170                    WEINHAUS & POTASHNICK                                      002/002

ESSENTIAL PIZZA, INC.

Dated: _____ February ___, 2012 _____          By: _____

                                                    Its: _____


Dated: _____ February ___, 2012 _____          _____
                                                    Shane Bass


Dated: _____ February ___, 2012 _____          _____
                                                    Cheryl Sundine


Dated: _____ February ___, 2012 _____          _____
                                                    Barbara Volney

as a core proceeding any dispute or controversy with respect to the interpretation or enforcement of this Agreement

PICOMN ACQUISITION CORPORATION

Dated:_____ February ___, 2012 _____   By: _____

Its: _____

Dated: _____ February ___, 2012 _____

H. Clifford Harris

Dated: _____February ___, 2012 _____

Brian Mills

ESSENTIAL PIZZA, INC

Dated: _____ February ___, 2012 _____   By: _____

Its: _____

Dated:_____ February ___, 2012 ___ ___

Shane Bass

Dated: _____February___2012 __ _

Cheryl Sundine

Dated: ____ February ___, 2012 _____ ___

Barbara Volney